UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LINDA FAYE JOHNSON

        Plaintiff,        Civil Action No.: 14-13236
                                Honorable Bernard A. Friedman
        v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 12, 14]

Plaintiff Linda Johnson appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court concludes that the administrative law judge ("ALJ") did not err in assessing Johnson's credibility or in formulating limitations in his residual functional capacity assessment ("RFC"). For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 14]** be **GRANTED**;

- Johnson's motion **[R. 12]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.   **BACKGROUND**

Johnson was thirty-nine years old on her amended onset date, a high school drop-out who went on to obtain certified nursing assistant training and previously had been employed in that capacity, in addition to being employed as a housekeeper and assembler on a production line. [R. 11-2, Tr. 37-38; R. 11-6, Tr. 207]. She claims disability on the basis of arthritis, gout, migraines, depression, anxiety, abdominal pains, nerve damage in her legs, memory problems, fatigue and difficulty reading and writing. [R. 11-5, Tr. 161; R. 11-6, Tr. 205]. She alleges she stopped working in February 2010 as a result of her conditions, although her original alleged onset date was December 1, 2006, and her amended onset date was September 25, 2009. [R. 11-2, Tr. 18; R. 11-5, Tr. 161; R. 11-6, Tr. 206].

A.   **Procedural History**

Johnson filed an SSI application on September 27, 2007, alleging disability as of December 1, 2006. [R. 6-2, Tr. 15]. The claim was denied initially and a hearing was held before an ALJ, who issued an unfavorable

2

decision on September 24, 2009. [*Id.*]. Johnson did not appeal. [*Id.*].

On October 20, 2011, Johnson filed the present DIB and SSI applications, again claiming disability as of December 1, 2006. [R. 6-5, Tr. 161-73]. Her claims were denied initially and she filed a timely request for an administrative hearing, held on January 17, 2013, where she and a vocational expert ("VE") testified. [R. 6-2, Tr. 32-70; R. 6-4, Tr. 96-118]. Her onset date was amended to the day after the prior ALJ decision. [R. 6-6, Tr. 238]. In a March 20, 2013 written decision, the ALJ determined that despite the existence of a prior ALJ decision, new evidence prevented the application of Acquiescence Rulings 98-3 and 98-4. [R. 6-2, Tr. 16-17]. He nevertheless found Johnson not disabled despite this new evidence. [*Id.*, Tr. 12-31]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-5]. Johnson timely filed for judicial review. [R. 1].

    **B.**    **The ALJ's Application of the Disability Framework**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

4

determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ concluded that Johnson was not disabled. At step one, he found that she had not engaged in substantial gainful activity since her amended alleged onset date of September 25, 2009. [R. 6-2, Tr. 18]. At step two, he identified severe impairments of "leg pain, chronic back pain, chronic gastritis, gout in feet, migraine headaches, right hand disorder, adjustment disorder, cognitive disorder and major depressive disorder." [*Id.*]. At step three, he found that none of Johnson's impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.*, Tr. 19]. In reaching this decision, the ALJ concluded that Johnson had no more than moderate restriction in activities of daily living, moderate difficulties in social functioning and moderate limitations in maintaining concentration, persistence and pace, with no episodes of decompensation. [*Id.*, Tr. 20].

Next, the ALJ assessed Johnson's RFC, finding her capable of performing light work that permitted her to alternate between sitting and

5

standing up to six times an hour, involved only occasional operation of foot controls, brief climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, brief crouching or kneeling, no crawling, and only frequent fine manipulation with the right upper extremity and right dominant hand. [*Id.*, Tr. 21].

The ALJ further limited Johnson to jobs that did not require complex written or verbal communication, only simple routine tasks in a low-stress job, requiring no more than occasional decision-making, no more than occasional changes in the work setting and no production rate or production pace. [*Id.*]. She was also limited to only superficial interaction with coworkers and the public, and occasional supervision. [*Id.*]. At step four, the ALJ determined that, based on the foregoing RFC, Johnson could not return to her past work. [*Id.,* Tr. 25]. At step five, with the assistance of VE testimony, the ALJ concluded that there were a significant number of jobs in the national economy that a hypothetical claimant matching Johnson's profile could still perform, such that she was not disabled under the Act. [*Id.,* Tr. 26-27].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical

7

signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

With these standards in mind, the Court finds that the ALJ's determination that Johnson is not disabled is supported by substantial evidence.

### III. ANALYSIS

Johnson alleges that the ALJ erred in two respects. First, she asserts that the ALJ's limitation to frequent manipulation with the right upper extremity and hand fails to properly account for the evidence of record, including the opinion of the consulting physician. Second, she argues that the ALJ's credibility determination erroneously extrapolates her minimal daily activities into an ability to work a full day or week, and fails to properly account for her credible claims of leg and hip pain. The Court finds no merit in either argument.

### A. Limitation to Frequent Manipulation

The ALJ's RFC limited Johnson to no more than frequent fine

8

manipulation with her right upper extremity and right (dominant) hand. [R. 6-2, Tr. 21]. Johnson claims this is error in light of consultant examining physician Dr. Florence Thomas's opinion that, based on her examination revealing edema (swelling) over the dorsum of the right wrist,[3] a decreased range of motion in the right wrist secondary to pain, and tenderness at the base of the right thumb, Johnson "may have difficulty with . . . repetitive right wrist movement." [R. 6-8, Tr. 401]. Johnson argues that Dr. Thomas's opinion is more consistent with a limitation to only occasional manipulation.

The Court disagrees that the ALJ's limitation is inconsistent with the weight he afforded Dr. Thomas's opinion. The ALJ considered Dr. Thomas's opinion, and gave it only "some weight," noting that portions were consistent with Johnson's history of chronic leg pain. [R. 6-2, Tr. 24]. However, the ALJ noted that the opinion used "vague and inconclusive" terms such as "may," limiting the weight the ALJ afforded to it. [*Id.*]. The ALJ then considered the medical record evidence, which showed mainly limited and conservative treatment for Johnson's pain, including the pain in

---

[3] The dorsum of the wrist is the side that is opposite to palm.

9

her hands, along with the bulk of the examinations finding full range of motion in all extremities. [*Id.*, Tr. 22-25]. Based on this, the ALJ concluded that a limitation to no more than frequent fine manipulation was sufficient. [*Id.*, Tr. 24].

The record evidence as a whole supports the ALJ's limitation to no more than frequent fine manipulation. First, although Dr. Thomas found swelling, pain and tenderness in Johnson's right wrist, she had full range of motion of the fingers of both hands, and no bony deformities or swelling in the fingers. [R. 6-8, Tr. 401]. A limited range of motion does not necessarily translate to limited fine manipulation skills. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[A]lthough claimant demonstrated a reduced range of motion in all of his joints, his manipulation, pinch, and fine hand coordination were intact.") Thus, Dr. Thomas's indication that Johnson may be limited with respect to the use of her right wrist is not inconsistent with Johnson being capable of fine manipulation.

It is, furthermore, telling that Dr. Thomas's is the only medical opinion Johnson relies upon to support her argument that she cannot perform fine manipulation with her right upper extremity and right hand. The treatment

10

notes (at least those that are legible) reveal that Johnson presented only once to her family physician, in 2011, with a specific complaint of right hand pain and decreased strength. [R. 6-7, Tr. 269]. Johnson was noted in 2010 and 2011 as being able to move all extremities without difficulty. [*Id.*, Tr. 281, 325, 346, 365]. More recently, on two consecutive days in January 2012, Johnson complained of generalized pain "all over" her body, but nothing specific to her hand, and an examination found no evidence of swelling or redness in any joint. [R. 6-8, Tr. 448-49]. Blood work conducted in connection with these appointments showed only anemia and nothing evidencing arthritis or disease-based inflammation.[4] [*Id.*, Tr. 450-57]. Given the lack evidence medical support limiting Johnson's capacity for fine manipulation, the Court finds no error with the ALJ's RFC.

Of additional note, while Johnson testified that weakness in her right hand limits her abilities, she cited her inability to stand for long periods due to leg pain as the sole reason that she had to cease working on the assembly line. [R. 6-2, Tr. 49-50, 53; R. 6-7, Tr. 289].

The Court does not agree that the ALJ was required to re-contact Dr.

---

[4] Specifically, testing for the C-Reactive Protein, Rheumatoid Factor and ANA (used to detect an autoimmune disorder) and thyroid stimulating hormone (TSH) were within normal limits. [*Id.*, Tr. 450-57].

11

Thomas to seek clarification. Ordinarily, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). However, the regulations require an ALJ to re-contact a consulting physician when a report is inadequate or incomplete. 20 C.F.R. §404.1519p (b). "Where there are obvious gaps in the record, the ALJ has the duty to develop the administrative record with respect to the missing evidence." *Kendall v. Astrue*, No. CIV.A. 2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011). Courts evaluate whether an ALJ has failed to fully develop the record on a case-by-case basis. *Umara v. Comm'r of Soc. Sec.*, No. 2:12-CV-1119, 2013 WL 6001003, at *4 (S.D. Ohio Nov. 12, 2013), *adopted by* 2014 WL 116370 (S.D. Ohio Jan. 10, 2014).

    In this case, the ALJ did not fail to fully develop or ignore obvious gaps in the record. The evidence of record showed no specific treatment for Johnson's hand pain and only one complaint of hand pain in six-years-worth of medical records, and Johnson has not proffered that there are any missing records. Thus, the ALJ's failure to re-contact Dr. Thomas cannot

12

be deemed error worthy of remand.

### B. Credibility

Johnson argues that the ALJ relied too much on her limited daily activities to sustain his credibility determination. She argues that her activities of washing dishes using a dishwasher and seasoning chicken are insufficient to translate to an ability to perform full-time work. She further argues that the ALJ gave short shrift to her credible claims of hip and leg pain.

Credibility determinations of witnesses are within the province of the ALJ, and will not be overturned "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

The Court agrees that the ALJ misstated Johnson's actual testimony pertaining to her daily activities when addressing her credibility. [R. 11-2, Tr. 25; 46-49]. Further, washing dishes and seasoning chicken, when viewed in isolation, may be insufficient to translate to an ability to work a full-time job. *See e.g. Walston v. Gardner*, 381 F.2d. 580, 586 (6th Cir. 1967) ("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not

13

necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity.").

However, the ALJ did note earlier in the decision, when determining that Johnson had moderate limitations of daily living, that she prepared only simple meals, had not done household chores in a long time, sometimes did not shower for several days due to pain, and denied current hobbies. [R. 11-2, Tr. 21]. Further, the ALJ did not rely solely on Johnson's alleged daily activities to support his credibility determination. Instead, as required by the regulations, he relied on the combination of Johnson's allegations of pain, her daily activities, and the objective medical evidence of record to conclude that her claims of disabling conditions were not fully credible. *See* 20 C.F.R. §§ 404.1529(c)(3), 416 929(c)(3).

Specifically, the ALJ cited medical evidence showing that Johnson's complaints of disabling pain were belied by the sporadic and conservative treatment she received, which included mostly only prescriptions for Vicodin. [R. 6-2, Tr. 22-23; R. 6-7, Tr. 266-72, 289-290, 333, 362; R. 6-8, 434, 448-49, 479-80]. These records do not show that Johnson reported that the Vicodin was ineffective. Additionally, treatment and hospital records where examinations were performed consistently revealed

14

Johnson's ability to move all extremities without difficulty, normal back inspections, a steady gait, and a normal range of motion. [R. 6-7, Tr. 281, 310, 312, 325, 346, 365]. Johnson was further noted to be sometimes uncooperative with requests for musculoskeletal examinations, and multiple test results, including MRIs, venous scans and bloodwork, were generally normal in relation to her claims of pain. [R. 6-7, Tr. 264, 290; R. 6-8, Tr. 448; 450-57, 484]. An EMG from 2006 was within normal limits and a bone scan from 2007 showed only mild osteoporosis. [R. 6-8, Tr. 413-14, 428-29]. In July 2011, an anesthesiologist declined Johnson's request for an injection for her back because he did not find her to be a candidate in light of the normal MRI findings. [*Id.*, Tr. 290]. Thus, even though the ALJ misstated Johnson's claimed activities of daily living, his credibility determination is supported by substantial evidence of record and should not be disturbed.

Finally, contrary to Johnson's argument, the ALJ did not err in his assessment of her claims of leg and hip pain. As noted above, the record evidence documented only sporadic and conservative treatment for her pain. In fact, the only evidence of any objective finding of abnormalities were Dr. Thomas's findings of decreased range of motion in all planes of

15

the lumbar spine, bilateral hips and left knee and reduced strength in the distal left lower extremity (the thigh above the knee), secondary to pain. [R. 6-8, Tr. 403-404]. As a result, Dr. Thomas opined that Johnson "may have difficulty with bending, squatting, prolonged walking, climbing stairs, pushing [and] pulling . . . ." [*Id.*, Tr. 401].

The ALJ's RFC incorporated those possible limitations, including requiring a sit-stand option and limiting Johnson's frequency of climbing stairs, ropes or scaffolds, operating foot controls, crouching, kneeling and crawling. [R. 6-2, Tr. 21]. While Johnson claims error with the ALJ's assessment, she offers no evidence that would support more limiting restrictions than those the ALJ imposed. Therefore, the Court finds no error in the ALJ's determination, and concludes that his decision finding Johnson not disabled is otherwise supported by substantial evidence of record.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Johnson's Motion for Summary Judgment **[R. 12]** be **DENIED**, the Commissioner's Motion **[R. 14]** be **GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD

Dated: July 15, 2015

United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to

17

the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2015.

s/~~Marlena Williams~~ Karri Sandusky for

MARLENA WILLIAMS
Case Manager

18